IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Crim. No. 11-00293 (RBK) |
| v. | : **OPINION** |
| LARRY REDDICK, | : |
| Defendant | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion for Reduction of Sentence under the First Step Act and Motion to Appoint Counsel (ECF No. 86). For the reasons set forth below, Defendant's Motions are **DENIED**.

I.   BACKGROUND

   A.   Factual Background

Defendant Larry Reddick ("Defendant") is an inmate in federal custody at Federal Correction Institution Danbury ("FCI Danbury"). (ECF No. 86, at 1). Defendant pleaded guilty to conspiring to distribute and possess with intent to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. § 846 and the use of a firearm to commit murder in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(j)(1). (ECF No. 94, at 2). In August 2012, he was sentenced to a term of 270 months' imprisonment followed by ten years of supervised release. (*Id*. at 3).

1

On February 2, 2022, Defendant filed a motion *pro se* for reduction of sentence under the First Step Act and for appointment of counsel after previously availing himself of administrative remedies. (ECF No. 86). On January 5, 2022, Defendant first filed a request for compassionate release with the Board of Prisons. (ECF No. 94, at 3). This request was denied on January 12, 2022. (*Id*.). Defendant then filed the current motion with the Court seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) based on his "history of smoking that began at the age of seventeen." (*See* ECF. No. 86, at 1-2). The United States responded in opposition to Defendant's motion on August 12, 2022. (ECF No. 94).

## II.   LEGAL STANDARD

### A.   Motion for Reduction of Sentence Under the First Step Act

Section 3582(c)(l)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(l)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons, for a reduction in sentence under 18 U.S.C. § 3852(c)(l)(A)(i) provided, however, they satisfy the exhaustion requirements first. *United States v. Rodriguez,* 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(l)(A) is to exhaust any available administrative remedies. *United States v. Babbitt,* 496 F. Supp. 3d 903, 907 (E.D. Pa. 2020). To exhaust administrative remedies, a defendant must first present his request for compassionate release to the warden. *United States v. Raia,* 954 F.3d 594, 595-96 (3d Cir. 2020). Thirty days after submitting the request or after receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.*; *Babbitt,* 496 F. Supp. 3d at 907. At the second step, a defendant must show that "(l) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera,* No. CR 06-849 (NLH), 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (quoting *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 181.13 cmt. n.l(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only

3

caregiver.

U.S.S.G. § 1B1.13, cmt. n.l(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13 is a catchall provision that gives the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. *Id.* cmt. n.l(D). The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

The Third Circuit recently held that courts are not bound by Section 1B1.13's definition of "extraordinary and compelling reasons" when considering prisoner-initiated motions. *United States v. Andrews,* 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied,* 142 S. Ct. 1446 (2022). Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions. *Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

### III. DISCUSSION

The United States does not dispute that the first step, exhaustion of administrative remedies, has been satisfied here. (ECF No. 94, at 3). Defendant sought compassionate release from the warden of FCI Danbury, which was denied. (*Id.*). Thus, the Court must consider whether Defendant has carried his burden at the second step of the analysis. We find that Defendant has not shown that extraordinary and compelling reasons warrant a reduction in his sentence.

#### A. Extraordinary and Compelling Reasons

Defendant asserts that the COVID-19 pandemic, in combination with his history of smoking, constitute extraordinary and compelling circumstances warranting compassionate release. (ECF No. 86, at 1-2). Defendant contends that "the specific shortcomings of FCI Danbury" with respect to COVID-19 put himself and others "at far greater risk of serious health complications and even death as a result of infection with the disease." (*Id*. at 5). Defendant cites the "dormitory-style" housing at FCI Danbury as one challenge that increases his risk of infection and serious health complications. (*Id*. at 6).

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder,* 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020). Most defendants who successfully move for compassionate release related to COVID-19 through Section 3582(c)(l)(A) demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville,* 463 F. Supp. 3d 585, 597-98 (W.D. Pa. 2020).

Defendant has not demonstrated that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI Danbury. There are no active cases of COVID-19 at FCI Danbury among inmates or staff. *Coronavirus,* FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last visited November 14, 2022). Moreover, 974 inmates and 202 staff members at FCI Danbury have been fully vaccinated against COVID-19 to date, and inmates have been offered booster shots. *Id*. While Defendant himself has refused vaccination twice (ECF No. 94, at 10), the vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States of America v. Martinez,* No. CR 16-503 (KM),

2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). Further, now that COVID-19 vaccinations are available to inmates in the Bureau of Prisons, compassionate release motions on the basis of COVID-19, Defendant's included, generally lack merit. *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021).

Nor has Defendant established that the risks he faces from COVID-19, in light of his individual medical conditions and circumstances, are so extraordinary and compelling as to justify compassionate release. Defendant asserts that his "history of smoking" places him at an "especially elevated risk of serious complications or even death" if infected with COVID-19. (ECF No. 86, at 2). While smoking might raise the risk of severe illness due to COVID-19, *People with Certain Medical Conditions,* CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 2, 2022), courts have consistently found that the fact that an inmate may be at heightened risk from COVID-19 due to smoking is insufficient, without more, to constitute an "extraordinary and compelling" reason warranting compassionate release. *See United States v. Jones*, No. CR 02-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (concluding that defendant's history of smoking in and of itself did not present extraordinary and compelling circumstances warranting compassionate release) (collecting cases). Defendant's argument is further undercut by the fact that he has already contracted, and recovered from, COVID-19 twice "without significant consequence." (ECF No. 94, at 13).

Moreover, as Defendant has been offered the COVID-19 vaccine twice and declined it both times (ECF No. 94, at 10), his argument is even further weakened. The Third Circuit, in affirming this Court's decision to deny a defendant's motion for compassionate release based in part on vaccination, noted that district courts "routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release." *United States v. Thomas*, No. 21-1645, 2022 WL 296594 at *2 (3d Cir. Feb. 1, 2022) (collecting cases).

The Court does not wish to minimize Defendant's concern for his well-being or seriousness of the COVID-19 pandemic for those in custody. However, Defendant has failed to demonstrate that his circumstances warrant release. He has not shown that he is at a uniquely high risk for severe illness from COVID-19, nor has he proven that there is an actual risk of exposure at FCI Danbury. He has also failed to show that his smoking history provides an independent basis for compassionate release. And while commendable, Defendant's rehabilitative efforts do not move the needle here. *United States v. Garrett*, No. CR 18-125 (WJM), 2022 WL 1617679 at *3 (D.N.J. May 23, 2022) ("[A] defendant's rehabilitation 'is not, by itself, an extraordinary and compelling reason.'" (citing U.S.S.G. 1B1.13, Application Note 3)).

### B.    Section 3553(a) Factors

An analysis of the Section 3553(a) factors further supports the denial of Defendant's request for release. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)   the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Defendant asserts that his efforts at rehabilitation, plan for release, and history of employment support a grant of compassionate release. He notes that his "positive strides in pursuit of rehabilitation" caused "his custody classification [to be] lowered" while in custody. (ECF No. 86, at 1). He also points toward completion of his GED and participation in other "academic enrichment and rehabilitative programs during his time behind bars" as further support for release. (*Id*. at 2). Defendant states that he has a release plan to live with his long-term girlfriend and cites "a significant history of legitimate, gainful employment" as evidence for his ability "to [secure] future employment" in the case of release. (*Id*. at 3).

The government argues that the § 3553(a) factors weigh against Defendant's release. They characterize Defendant as "a lifelong criminal and drug trafficker." (ECF No. 94, at 15). The Government describes his criminal conduct as "[occurring] over a period of many years" and "could not be more serious." (*Id*. at 16). They assert that the need for deterrence of Defendant as well as other drug traffickers is strong and that Defendant "remains a danger to the community." (*Id*.).

The Court agrees with the United States that the § 3553(a) factors counsel against release. The nature and circumstances of Defendant's criminal history, which includes drug trafficking and gun violence, weigh against early release. Given the serious nature of Defendant's crimes, which the Court recognized in imposing a 270-month sentence, the Court is mindful of the need for the

8

sentence imposed to afford adequate deterrence and protect the public from future violence. Moreover, the Court believes that the present sentence is needed to provide just punishment and specific deterrence for Defendant. Accordingly, the Court finds that the Section 3553(a) factors weigh against release.

### C. Motion for Appointment of Counsel

There is no right to counsel for a criminal defendant seeking compassionate release under 18 U.S.C. § 3582(c). *United States v. Millhouse*, No. 20-3633, 2021 WL 3280789, at *3 n.4 (3d Cir. 2021); *United States v. Dorsey*, 520 F. Supp. 3d 681, 683–84 (E.D. Pa. 2021). "In determining whether to appoint counsel in compassionate release cases, a court must first determine whether the defendant's claim has some merit in fact and law." *United States v. Duncan*, No. CR 21-187, 2022 WL 1213466, at *2 n.2 (D.N.J. Apr. 22, 2022) (quoting *United States v. Gonzalez*, No. CR 02-446-01, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021)) (cleaned up). If meritorious, a district court has discretion to appoint counsel after considering:

> 1. [The movant's] ability to present his or her own case; 2. the difficulty of the particular legal issues; 3. the degree to which factual investigation will be necessary and the ability of the [movant] to pursue investigation; 4. the [movant's] capacity to retain counsel on his or her own behalf; 5. the extent to which a case is likely to turn on credibility determinations; and 6. whether the case will require testimony from expert witnesses.

*Dorsey*, 520 F. Supp. 3d at 684 (*citing Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)).

For the reasons stated above, Mr. Reddick's motion for compassionate release does not have merit in fact and law. Therefore, Defendant's motion for appointment of counsel (ECF No. 86) is denied. *See Millhouse*, 2021 WL 3280789, at *3 ("[G]iven that [the defendant's] motion for

compassionate release lacked arguable merit, the District Court did not err in denying his motion for appointment of counsel."); *United States v. Rivera*, No. CR 06-849, 2022 WL 3152654, at *4 n.9 (D.N.J. Aug. 8, 2022) ("Defendant is not entitled to counsel on a compassionate release motion, and it would be a waste to appoint counsel where the motion is futile.").

## IV. CONCLUSION

For the reasons expressed above, Defendant's Motion for Reduction of Sentence under the First Step Act and Motion to Appoint Counsel (ECF No. 86) are **DENIED.** An order follows.

Dated:  11/14/2022

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge